Bradbury, J.
This action was begun by fl ling a petition, which, as amended, after omitting the formal parts, reads as follows:
“Plaintiff complains of the defendant for that said defendant is indebted to him as treasurer of Miami county, Ohio, in the sum of $753.57, as taxes due from him as such guardian, for the years 1890, 1891,1892, 1893,1894 and 1895, on personal property of his said ward, Allyn Dunlap, which he, the said guardian as aforesaid refused to list for taxes during the years as aforesaid; for the year 1890, on property valued at $2,500, with $1,250 added thereto for penalty; for the year 1891 on property valued at $3,000, with $1,500 added thereto as penalty; for the year 1892 on property valued at $3,500 with $1,750 added thereto as penalty; for the year 1893 on $3,000, with $1,500 added thereto as penalty; for the year 1894 on $2,500 with $1,250 added thereto as penalty; for the year 1895 on $3,000 with $1,500 added thereto as penalty.”
To this amended petition, the following answer was interposed:
“Now comes John A. McCurdy, guardian of Allyn Dunlap, defendant herein, and, for answer to the amended petition of the said plaintiff, admits that said plaintiff is the duly elected, qualified and acting treasurer of Miami county, Ohio, and that said defendant, John A. McCurdy, is the duly appointed, qualified and acting guardian of Allyn Dunlap, a minor over fourteen years of age; and admits that the several amounts as stated in said amended petition, and for the years mentioned *467 therein, were charged against said defendant, and that he refused to pay the same.
And, for defense, to said amended petition, defendant says that his said ward is possessed of a large amount of personal property in the form of notes and other evidence of indebtedness, and, as such guardian, he has each year, as complained of in said amended petition, listed said property for taxation at a value far in excess of the value of what other property, both real and personal, was and is listed for taxation during the years mentioned in said amended petition, in the state of Ohio and county of Miami, or both.
Defendant further says that in making his returns to the auditor of Miami county for the taxation, of his said ward’s property of said notes and other evidences of indebtedness he deducted, during all the years mentioned in said amended petition about twenty per cent, of their face value; and the amounts set out in said amended petition, for the several years therein mentioned, is the difference between the face value and the amount said property was listed for taxation.
Defendant further says that real estate, bank stock, notes and other personal property in the state of Ohio and in Miami county are not assessed or placed upon the tax duplicate by the officers of the state or county, who are authorized or charged with such duty, for more than seventy per cent, of their true value in money, and that such facts are recognized by all officers, both state and county, in making the appraisement of property for the purpose of taxation.
Defendant further says that the board of equalization of the city of Troy, Ohio, has, each year complained of in said amended petition, regularly *468 passed upon the tax returns of the said defendant with full knowledge of the deduction made from the face value of the said notes and other evidences of indebtedness, and approved the same; and that said notes and other evidences of indebtedness were, each year during’ the time mentioned in said amended petition, assessed at a greater sum, in proportion to their true value in money, than the other property, both real and personal, in the state of Ohio.
Defendant further says that no other property is charged in said amended petition as being omitted from the returns made by the said defendant other than the twenty per cent, deducted from the face value of said notes and other evidences of indebtedness.
Defendant, further 'answering, says that in the listing of his said ward’s property as above stated, viz.: at about twenty per cent, less than its face value, that he took into consideration the risk and probability of loss incident to the loaning and .collections of the funds of his said ward, and that, by reason of all the above facts, said notes and other evidences of indebtedness were listed for taxation by said defendant at their true value in money, and far in excess of what all other property, both real and personal, in the state of Ohio, is or was assessed for taxation during the period complained of in said amended petition.
Wherefore, defendant asks that this action may be dismissed, and that he go hence without day, and with his costs herein.”
To this answer a demurrer was interposed on behalf of the treasurer and sustained by the court of common pleas. The plaintiff in error (defendant® in®that®*court)jrot^desiring to plead further, *469 judgment was rendered against him for the amount claimed in the petition. This judgment was affirmed by the circuit court; whereupon the cause is brought, on error, to this court.
The only question made in' argument related to the sufficiency of the answer.
This answer, although it purports to be an entirety, really contains two distinct defenses. The object of the first one, in the order in which they are stated, is to defeat the claim of the treasurer, as set forth in the petition, by showing that the property which the plaintiff in error, was charged with listing at too low a valuation, consisted of promissory notes and other credits; that he had listed them at eighty per cent, of their face value, while during’ the same period all other property within the county where his return was made, as well as that within the state at large, had been listed for taxation at only seventy per cent, of its true value in money; and that this latter ratio of value was recognized throughout the county and state by all officers and boards thereof whose duties relate to valuing’, and equalizing values of property listed for taxation as the rule by which property was to be valued for taxation.
The oral arguments of counsel as well as that contained in their written brief were directed to this defense alone.
Counsel for plaintiff- in error contended that, as the demurrer admitted the facts stated in the answer to be true, it appeared that plaintiff in error, although he had not listed his ward’s property at its true value in money j^et had listed it at a valuation relatively greater than all other property in the state had been listed ; that it had borne its share of the burden of taxation before the *470 county auditor had raised the valuation and added the penalties which were the foundation of the claim made in the petition; and that his ward’s property having- thus borne its share of that burden was protected from further exactions by section 2 of article XII, of our constitution, which reads as follows:
“Laws shall be passed, taxing by a uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise; and also all real and personal property, according to its true value in money; but burying g’rouhds, public school houses, houses used exclusively for public worship, institutions of purely public charity, public property used exclusively for any public purpose, and personal property, to an amount not exceeding in value two hundred dollars, for each individual, may, by general laws, be exempted from taxation; but all such laws shall be subject to alteration or repeal; and the value of all property, so exempted, shall, from time to time, be ascertained and published as may be directed by law. ’ ’
Just what is meant or intended to be accomplished by the first clause of section 2, of article XII, above cited, that “Laws shall be passed taxing by uniform rule,” etc., may not be perfectly clear. The language is mandatory and directed to the legislature, but it is manifest that no power exists in the state to compel that body to take action upon any subject. It would seem, therefore, that the only purpose this clause could serve would be to limit the power of the legislature when it did act by forbidding it to pass laws taxing one class of property by one rule and another class by another rule. For instance, the general assembly could not in the face of this clause of the constitu *471 tion authorize money to be taxed at one rate and, real property at another rate. An attempt thus to •discriminate in favor of or against any class of property would violate this constitutional provision. In this respect, at least, this clause would secure uniformity. However, it does not bear very materially on the question before us. That question relates to the subject of valuation, and is governed by the second clause which prescribes that laws shall be passed taxing’ “all real and personal property” “according to its true value in money. ” This provision is clear and explicit. All property not exempt must be taxed, and the value placed on it for that purpose shall be “its true value in money.”
If the second clause establishes a fixed standard by which the value of all property, subject to taxation, shall be ascertained, and the first clause secures. a uniform rate at which, after being thus valued, it shall be taxed, it is manifest that together the two clauses cover the entire field and preclude inequality in either respect in as far as that end can be attained by a constitutional provision. However, as no discrimination in respect of rates is charged, we are at present only concerned with the constitutional provision which relates to valuation and establishes as a standard for that purpose the true value in money of all property subject to taxation. This provision of the constitution forbids the enactment of any statute discriminating in this respect for or against any article or class of property subject to taxation, and it is immaterial whether the discriminating provision relates to the property itself, depending on its character or uses, or whether it relates to the person of the owner. *472 Whatever may be the nature of or the uses to which any particular article or class of property may be put, or whomsoever may be its owner, when taxed as property it must be valued according to the constitutional standard, and any statute prescribing any other rule or standard would be repugnant to the constitutional provision and therefore void.
Counsel for plaintiff in error, however does not contend in his argument that any such discriminative statute exists, nor does he deny the power of the general assembly to pass laws prescribing and regulating the method by which property shall be listed and valued for taxation.
The authority of the legislature to prescribe by statute a system for levying and collecting taxes is an incident of its legislative power, and the very section, of the constitution relied on by the plaintiff in error for his protection, contemplates, or even enjoins upon the legislature the performance of this labor. That body has acted and the rules it has prescribed for valuing property are found in sections 2739 and 2792, Revised Statutes, the former section relating to personal property, the latter to real estate.
The rules laid down in these sections are intended and in the main are well adapted to secure the listing- of every species of property subject to taxation according to the constitutional standard: i. e. according to its true value in money.
Section 2739, Revised Statutes, after prescribing a rule for valuing tangible personal property, investments in bonds, etc., money and depreciated circulating notes, proceeds to prescribe rules for valuing credits, and here the following provision ,appears:
*473 “Every credit for a sum certain, payable either in money, property of any kind, labor or service, shall be valued at the full amount of the sum so payable, except that if it be for a specific article, or for a specified number or quantity of any article or articles of property, or for a certain amount of labor or services of any kind, it shall be valued at the current price of such property or of such labor or service, at the place where payable.”
This language seems to require in express terms, free from ambiguity, that every credit payable in money shall be valued for taxation at its face value. The words employed are: “Every credit for a sum certain * * * shall be valued at the full amount of the sum so payable except, ” etc., etc., and the exception does not apply where the credit is payable in money.' What is the meaning of the phrase £ £ the full amount of the sum so payable ” ? It is, we think, susceptible of only one construction, and that it means the “sum payable ” by the terms of the instrument and this is equivalent to “payable on the face of the instrument.” The language will bear no other construction, and as thus construed, manifestly it requires the owner of a promissory note, book account or other credit payable in money, to list the same for taxation at its face value without regard to the solvency of the maker or debtor, and as thus construed,' the provision clearly conflicts with that clause of section 2 of article XII of the constitution, which declares that all property subject to taxation shall be listed at its “true value in money.” For the face value of a promissory note or book account held against an insolvent person, or the sum payable by its terms, is not- its true value in money in any fair sense of that phrase.
*474 The legislature no more has power to prescribe an arbitrary and fixed value for this specie of property than it has in respect to any other class. As well might it attempt to declare that, without regard to its actual value, every horse shall be valued for taxation at one hundred dollars, and every cow at one dollar.
The answer interposed bj^ the plaintiff in error, is not as clear and explicit as it should have been where so important a question was to be made as was argued by counsel. The discussion of-counsel took a wider range than the answer justified. That answer when analyzed does not set forth that any statute of the state discriminates against credits, and no consideration of the provisions of section 2739 Revised Statutes, which does so discriminate would have been necessary, but for the fact that his answer shows that his ward’s property was of that class, and had been listed at only eighty per cent, of its face value. If that provision of section 2739 a fair construction of which, as already shown, requires credits to be listed at their face value, was valid then the admission that he had-listed those of his ward at eighty per cent, only of such face value, would be fatal to his defense even if eighty per cent, of their face value was their true value in money.
This will bring us to the consideration of the defenses specifically made in the answer.
1. We think that a careful examination of this answer will show that although it states that property throughout the state including the county of Miami, was assessed at not over seventy per cent, of its true value in money and that such fact was recognized by all officers, state and county, in making appraisements of property for taxation, *475 yet that it does not set forth any unlawful conspiracy by those officers to discriminate against credits generally or against those of the ward of plaintiff in error, and that therefore the invalidating- effect of such a conspiracy is not before us.
It follows therefore that, as far as concerns this branch of the case the claim of the plaintiff to relief rests upon the mistaken judgment of assessing officers, and equalizing boards. He does not contend that his wards property was taxed at more than its true value in money, but that by the erroneous judgments of the taxing officers and boards throughout the state all other property was valued too low.
This complaint is not answered by replying that if his property has not been valued too high, it does not concern him that other property is valued too low. , For it must be presumed that the public authorities will levy no more taxes than are needed for public purposes, and if this be so, then as the value of the whole taxable property of the state, or of any particular taxing district, is diminished, the rate of taxation must of necessity be increased. Therefore if the property of the ward, of plaintiff in error, was valued at its true value in money, and all other property in the state or district was valued by the same standard, it follows that the rate of taxation would be less than if all other property in the state or district was valued at only fifty per cent, of its true value in money. Therefore, the burden imposed on each taxpayer within the state or within any taxing district of the state is increased in the same proportion that the value of all other property within his district is diminished. The only valid answer to the complaint made on this ground lies in the inherent difficulties *476 that necessarily intervene. With a considerable afmy of officers each of whom in the first instance is authorized to fix a value on every article of prop=erty subject to taxation in his district and a large number of separate equalizing boards acting independently of each other, exact equality of valuation is wholly Impracticable, and according to the natural course of things material inequalities in this respect may be expected, and it is a matter of common knowledge that notwithstanding this constitutional provision and numerous statutes enacted in accordance with it, inequalities have constantly crept in. That the ratio between the value of real estate and its assessed value for taxation in one county may and often does materially differ from that which prevails in another county. This ratio may and doubtless does differ in different townships of the same county, in different wards of the same municipality, or even in respect to different pieces of real estate in the same ward or township. So in respect to articles of tangible personal property. For instance if each horse, cow, and each sheep had the same value, that every other animal of its kind bears, the rule of uniform valuation could be easily and accurately applied to them. Unfortunately for this purpose each has a distinct individuality— such as respects age, size, form, breeding’, etc. — and its value depends upon these individual qualities, and it is quite improbable that two men could not be found who, after easting up the individual qualities of each animal would arrive at the same estimates of its value. The mischief has prevailed ever since the adoption of the present constitution, nearly half a century ago, and the fact that this is the first appeal made to the courts of the state for a remedy *477 .against it goes far to show that in the opinion of the bar of the state and of those who suffer on account of it no remedy existed. This mischief so long endured counsel for plaintiff in error has depicted with much force and ingenuity, but he suggested no remedy, and we have discovered none susceptible of practical application by the courts of the state. Indeed it may be doubted whether the whole judicial force of the state, even if directed to that end, would be adequate to the task of settling the innumerable controversies that would probably arise if it should undertake to revise the values yearly placed on every article of personal property in the state subject to taxation.
We think, therefore, that where property has been valued according to the constitutional rule, and has been taxed upon that basis, its owner cannot defend against its payment by showing that, on account of the erroneous judgment of assessing officers and boards of equalization, all other property within the state or district has been valued too low, and taxed upon that lower valuation. For inequalities thus arising no relief can be given by the courts. The remedy, if any exists, lies in the selection of officers who possess a sounder judgment.
2. The last clause of the answer of the guardian, however, contained the following allegations, which we think constitute a complete and valid defense to the petition:
Defendant, further answering, says that in the listing of his said ward’s property as above stated, viz.: at about twenty per cent, less than its face value, that he took into consideration the risk and probability of loss incident to the loaning and collections of the funds of his said ward, and that, by *478 reason of all the above fasts, said notes and other evidences of indebtedness were listed for taxation by said defendant at their true value in money. * * *
We think these averments when fairly construed show that during the years named in the petition, the notes and other credits of the ward had been listed and returned for taxation at their true value in money, although at only eighty per cent, of their face value. If this is true no additional value could have been lawfully added by the county auditor, for as already shown, that provision of section 2739, Revised Statutes, which requires credits to be listed for taxation at their face value is invalid because repugnant to that clause of section 2 of article XII of the constitution of this state which requires that all property subject to taxation shall be valued for that purpose at its true value in money. For this reason the judgment of the circuit court will be reversed.

Judgment reversed.